UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA L,[1]<br><br>*Plaintiff*,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>*Defendant*. | No. 3:24cv324(MPS) |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

The Plaintiff has filed an administrative appeal under 42 U.S.C. § 405(g) against the Commissioner of Social Security, challenging the denial of her application for disability insurance benefits. She argues that the decision should be reversed because the Administrative Law Judge ("ALJ") erred in determining her Residual Functional Capacity. ECF No. 28. Because I find that the ALJ did not err and the decision was supported by substantial evidence, I grant the Commissioner's motion to affirm the decision, ECF No. 36, and deny the Plaintiff's motion to reverse. ECF No. 28.

I assume familiarity with the Plaintiff's medical history. I also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record.[2] I cite only those portions of the record and the legal standards necessary to explain this ruling.

---

[1] As set forth in the Court's January 8, 2021 Standing Order, the Plaintiff is identified by her first name and last initial, or as "the Plaintiff." See Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

[2] Citations to the administrative record, ECF No. 12, appear as "R." followed by the page number appearing in the bottom right-hand corner of the record.

## I. STANDARD OF REVIEW

The Court "may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence[.]'" *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022).

> The substantial evidence standard is a very deferential standard of review — even more so than the clearly erroneous standard ... Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion ... In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn ... If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld ... The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.

*Id.* at 74 (internal quotation marks and citations omitted).

## II. PLAINTIFF'S RFC

The ALJ determined that the Plaintiff[3] retained the RFC[4] to perform light work[5] with the following limitations:

> Never use lower extremities to operate foot controls. Never climb ladders/ropes/scaffolds. Occasionally climb stairs/ramps, balance, stoop, and crouch. Occasionally kneel/crawl. Frequently handle/finger. Can perform simple, routine, repetitive tasks. Can sustain concentration, pace, and persistence for 2-hour segments. Occasional interaction with supervisors. Occasional, non-collaborative interaction with coworkers. Brief and superficial (no more than 10% of the workday) interaction with the public. Requires work with little/no changes

---

[3] The ALJ determined that the Plaintiff had severe impairments of "Diabetes, Diabetic Neuropathy, and Depressive Disorder," and non-severe impairments of hypertension, presbyopia, and obesity, but found that none of these impairments or combination of impairments meet or medically equal the severity of one of the listed impairments in Appendix 1, Subpart P of 20 CFR part 404. R. 20.

[4] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (citation and internal quotation marks omitted).

[5] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

2

      in duties/routines. No work requiring independent judgment (no setting duties/schedules for others, no responsibility for the safety of others).

R. 22.[6]

### III. DISCUSSION

The Plaintiff contests the ALJ's RFC determination. Specifically, she claims that: the ALJ "played doctor" in formulating the Plaintiff's physical RFC; the ALJ should have credited the opinion of the consulting examiner as to the Plaintiff's fall risk; the RFC is unsupported by substantial evidence; and the ALC erred as to the restrictions imposed on the Plaintiff's ability to interact with the public.

*Playing Doctor*

The Plaintiff first argues that the ALJ "played doctor" in concluding that the Plaintiff could perform light work. ECF No. 28-2 at 8. This is so, the Plaintiff contends, because the ALJ rejected the medical opinions from the consultative examining physician and the two State Agency medical consultants, "the only medical opinions in the record that related to the Plaintiff's physical symptoms, conditions, and limitations." *Id.* at 12. The Plaintiff asserts that as a result, the ALJ "formulated an RFC by 'playing doctor' and substituting his own lay opinion for that of a qualified medical opinion." *Id.*

Insofar as the Plaintiff argues that substantial evidence does not support the ALJ's RFC determination simply because there is no medical opinion in the record consistent with the ALJ's findings, that argument fails.

"An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ[.]" *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir.

---

[6] The ALJ subsequently determined that there were jobs in the national economy that the Plaintiff could perform and that as a result, she was not disabled from July 12, 2021, her alleged onset date, through July 19, 2023, the date of the decision. R. 26-27.

2021). *See* 20 C.F.R. § 404.1546(c) (The ALJ has the responsibility of assessing the claimant's RFC.); *Breinin v. Colvin*, 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion."). An ALJ assessing a disability claim is required to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). The ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision[.]" *Id.*; *Castle v. Colvin*, 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match [a medical source's] opinion …is not grounds for remand."). Indeed, "an ALJ is free to reach an RFC finding even without any supporting medical source opinions." *Nersinger v. Comm'r of Soc. Sec.*, 2020 WL 1151459, at *4 (W.D.N.Y. Mar. 10, 2020). *See McCoy v. Comm'r of Soc. Sec.*, 2020 WL 3316103, at *5 (W.D.N.Y. June 18, 2020) ("ALJ was permitted to formulate an RFC without a medical opinion that directly assessed [claimant's] physical ability to complete work-related functions") (citing cases).

*Dr. Klufas' Opinion*

The Plaintiff appears to argue that the ALJ should not have rejected the opinion of the consultative examiner, Dr. Klufas, that the Plaintiff had a "high risk of falling." ECF No. 28-2 at 14 (arguing that "[t]he ALJ's evaluation and interpretation of the record to undermine this medical opinion was tantamount to the ALJ 'playing doctor'"). I disagree.

On August 31, 2022, Dr. Klufas performed a consultative examination. He noted that the Plaintiff's "chief complaint" is "disability secondary to fluctuating blood glucose, poor activity tolerance, recurrent dizziness and anxiety. The patient apparently has gait instability with falls. This appears by history to be secondary to diabetic neuropathy." R. 582. The Plaintiff "state[d]

4

she has a lot of difficulty with ambulation because of severe sensory loss she has had. She does get tingling of the feet [and] loss of sensation." *Id.*

On exam, Dr. Klufas noted that the Plaintiff's "[s]ensory was diminished below the knee," that she could get on and off the examining table independently, could squat, with difficulty, but could not toe or heel walk without losing balance. R. 583. She walked without an assistive device. *Id.* He opined that that "[s]he does have findings which would be compatible with diabetic neuropathy." *Id.* In the summary of the report, Dr. Klufas stated that "[s]he does appear to have a poor activity tolerance and high risk of falling secondary to diabetic neuropathy, likely." R. 584.

The ALJ considered Dr. Klufas' opinion but concluded that it was not persuasive. R. 25. As to Dr. Klufas' assessment of the Plaintiff's fall risk, the ALJ found that "[t]he indications for high risk of falling and decreased sensation at the lower extremities are inconsistent with the treatment notes from the claimant's podiatrist. These notes show the claimant denied gait instability and falls and presented with intact monofilament testing." R. 25 (citing treatment records).

Substantial evidence supports the ALJ's conclusion that Dr. Klufas' opinion was not consistent with the record as a whole and not supported by record evidence.

On July 30, 2021, Dr. Alaigh conducted a diabetic foot exam and found normal monofilament testing[7] bilaterally. R. 663. When seen by Dr. Albright, a podiatrist, on June 9, 2022, the Plaintiff reported "symptoms of neuropathy [-] consistent burning and tingling to the feet. Reports this can be quite bothersome sometimes it does keep her awake at night." R. 571. The Plaintiff denied gait instability and feelings of numbness. *Id.* She also denied any falls in

---

[7] "Monofilament testing is used to test for diabetic neuropathy. It measures sensitivity to touch using a soft nylon fiber called a monofilament." *Minnifield v. Berryhill*, 2018 WL 4380979, at *4 (D. Conn. Sept. 14, 2018).

the last 12 months.  *Id.*  Monofilament testing indicated no loss of protective sensation.  *Id.*  Dr. Albright further found "[s]harp/dull sensation intact bilaterally" and that the Plaintiff had a negative Tinel's sign.[8]  *Id.*  Dr. Albright assessed the Plaintiff with Type 2 diabetes mellitus with diabetic polyneuropathy and nerve pain and prescribed capsaicin cream for her feet.  *Id.*  Dr. Albright stated that based on the Plaintiff's history and physical exam, she was at a low risk for diabetic foot complications.  R. 572.  Dr. Albright recommended that the Plaintiff followup in six months based on her subjective complaints.  *Id.*

The Plaintiff returned on December 15, 2022, and reported that the capsaicin cream "was not helpful."  R. 594.  Dr. Albright's note stated that "[t]oday [the Plaintiff] is noting more of an itching sensation. She reports she will take her socks off her feet and it will feel much better. But then it will return. Reports this can be quite bothersome sometimes it does keep her awake at night."  *Id.*  The Plaintiff again denied gait instability, feelings of numbness, and falls.  *Id.*  On exam, monofilament testing again reflected no loss of protective sensation.  *Id.*  Dr. Albright found that "[a]ll dorsiflexors, plantar: flexors, invertors and evertors 5/5 muscle strength bilaterally."  *Id.*  She prescribed a different foot cream.  R. 595.

When the Plaintiff next saw Dr. Albright in March 2023, she continued to report "an itching sensation" in her foot.  R. 613.  She also indicated she had trouble sleeping but "[o]therwise no new pedal complaints. Denies history of diabetic foot infection or diabetic foot ulceration."  *Id.*  Monofilament testing showed "sensation intact bilaterally."  *Id.*  "All dorsiflexors, plantarflexors, invertors and evertors 5/5 muscle strength bilaterally."  *Id.*  Dr. Albright's notes state that the Plaintiff had "[n]o loss of protective sensation on exam" but that she "does have subjective symptoms of peripheral neuropathy[.]"  *Id.*  She opined that the

---

[8] Tinel's sign is a test used to detect irritated or compressed nerves. A positive Tinel's sign occurs when tapping over a nerve causes a tingling or "pins and needles" sensation in the area supplied by that nerve. https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign

Plaintiff continued to present a "low risk for diabetic foot complications." R. 614. She prescribed a trial dose of Gabapentin at bedtime. R. 614.

Records from the Plaintiff's primary care physician, Dr. Bal, do not indicate any concerns with the Plaintiff's ability to walk or mention any concern with a risk of falling. *See* R. 618-35.

The opinions of the State agency physicians also do not lend support to Dr. Klufas' assessment. Dr. Lorenzo and Dr. Bijpuria each reviewed the Plaintiff's medical records - including Dr. Klufas' opinion - in forming their opinions, see R. 76, 82. Neither endorsed his assessment. To the contrary, Dr. Lorenzo and Dr. Bijpuria each determined that the Plaintiff could perform a range of medium work, that is, occasionally lift and/carry up to 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk a total of 6 hours in an 8 hour workday; sit (with normal breaks) for a total of 6 hours in an 8 hour workday; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds, and had no limitations as to her ability to balance, stoop (i.e., bend at the waist), kneel, crouch, and crawl. R. 75-76, 85-86.[9]

The ALJ did not err in finding that Dr. Klufas' opinion was not supported by, or consistent with, the medical evidence of record. The ALJ adequately explained his consideration of Dr. Klufas' opinion and his decision is supported by substantial evidence.

*Substantial Evidence*

The Plaintiff contends that the ALJ's physical RFC finding that she was capable of light work is not supported by substantial evidence. I disagree.

In July 2021, the Plaintiff's treating physician, Dr. Alaigh, noted that the Plaintiff had no joint or muscle pain. R. 663. She had no dizziness, weakness, numbness, or tremors. *Id.* The Plaintiff had full range of motion in all extremities. *Id.* She was seen a few months later to

---

[9] The ALJ ultimately discounted the physicians' assessments because he found they did not sufficiently consider the Plaintiff's neuropathy symptoms. R. 25.

followup on her diabetes. R. 659. The Plaintiff admitted to being noncompliant with insulin. *Id.* On exam, the Plaintiff continued to have full range of motion of all extremities. R. 660. No new complaints were noted at followup on October 15, 2021, and in fact, Plaintiff reported improvements in polyuria, polydipsia, and blurry vision. R. 656. No changes were noted during an examination on January 26, 2022. R. 654. When seen in May and September 2022, and April 2023, the Plaintiff reported some numbness but denied·polyuria, polydipsia, or blurry vision. R. 607, 647, 650. She consistently was assessed as having full range of motion in all extremities. R. 608, 648, 651.

Dr. Bal's August 27, 2021 note indicates that the Plaintiff denied musculoskeletal complaints. R. 629. Her exam was unremarkable, as were her subsequent appointments in which she made no mention of neuropathic complaints. R. 625, 620. In January 2023, Dr. Bal prescribed Lexapro and Trazadone to address the Plaintiff's depressive symptoms. R. 623. The next month, in response to the Plaintiff's complaints about continued insomnia, Dr. Bal increased the dosage of both medications. R. 618.

As already noted, records from the Plaintiff's podiatrist, Dr. Albright, reflect that the Plaintiff consistently denied gait instability, falling, and on exam, demonstrated full range of motion, normal strength, and intact sensation. R. 571-72, 594-95, 613-14.

Finally, the ALJ had ample evidence that the Plaintiff was capable of the minimal lifting requirements of light work from state agency physicians, each of whom determined that the Plaintiff could perform work above that level. R. 75-76, 85-86. The ALJ accommodated the Plaintiff's complaints of neuropathic symptoms by affording even greater restrictions than those recommended by the physicians. R. 25.

The Plaintiff posits that "[t]he problem with this reduction is that the ALJ did not explain why a reduction from Medium Level work (as opined by the State Agency doctors) should only be reduced to Light Level work, as opposed to Sedentary Level work, to accommodate the Plaintiff's neuropathy." ECF No. 28-2 at 15. But it is the Plaintiff, not the Commissioner, who carries the burden to prove a more restrictive RFC. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("[The Plaintiff] had a duty to prove a more restrictive RFC, and failed to do so."). And she points to no medical evidence that would require a more limiting RFC than that found by the ALJ. Her arguments about the RFC boil down to a mere disagreement with the ALJ's weighing of the evidence. It is not the Court's function to re-weigh evidence. Rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta*, 508 F. App'x at 56. "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's viewing of the persuasiveness of the evidence or to argue that the evidence in the record could support her position; she must show that no reasonable factfinder could have reached the ALJ's conclusions on this record." *Ernestine B. v. Comm'r of Soc. Sec.*, 2024 WL 4132377, at *3 (W.D.N.Y. Sept. 10, 2024). The Plaintiff has not met that burden.

*Interaction with the Public*

The Plaintiff's final argument is that the ALJ erred as to the limitation in the RFC regarding the Plaintiff's ability to interact with the public.

The ALJ limited the Plaintiff to "[b]rief and superficial (no more than 10% of the workday) interaction with the public." R. 22.

The Plaintiff asserts that the ALJ erred by treating "brief contact" and "superficial contact" as "coterminous." ECF No. 28-2 at 16. According to the Plaintiff, "the ALJ did not

9

account for the qualitative aspect of the limitation in the RFC because the ALJ conflated the terms "brief contact" and "superficial contact" and then defined them both as relating to a duration of time (i.e., 10% of the workday)." ECF No 37 at 2. As a result, the ALJ failed to include a "qualitative limitation." *Id.*

The Plaintiff points to no authority in which this articulation has been found to be error.[10] And in any event, the limitation, read fairly, addresses both the "quality" and "quantity" of the Plaintiff's interactions with the public. The Plaintiff is restricted to brief contact – no more than 10% of the workday – the quality of which is to be superficial. Contrary to the Plaintiff's argument, the ALJ did not treat the limitations as interchangeable.

## IV.     CONCLUSION

For the reasons set forth above, the Commissioner's Motion to Affirm the Decision, ECF No. 36, is GRANTED and the Plaintiff's Motion to Reverse, ECF No. 28, is DENIED. The Clerk shall close this case.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           April 1, 2025

---

[10] The cases the Plaintiff cites, all out of district, are inapposite. *See, e.g., Eden v. Comm'r of Soc. Sec.*, 2019 WL 7666532, at *2 (N.D. Iowa June 6, 2019) (court held that the ALJ's limitation to "brief, superficial interactions with others" was not consistent with a limitation to "only occasional interaction with the public, co-workers, and supervisors" because "occasional" and "superficial" are not coterminous); *Redd v. Comm'r of Soc. Sec.*, 2021 WL 1960763, at *3 (W.D. Mich. May 17, 2021) (where ALJ stated he found persuasive state agency psychological consultant's opinion that Plaintiff's "social functioning was reduced and [he] might not work well with the public," and that "[h]e might work best alone or in a small, familiar group," but limited Plaintiff to "occasional interaction with co-workers and the public," remand was required because the ALJ failed to address the "quality" of interaction, which was the basis of the psychologist's opinion); *Lindsey v. Comm'r of Soc. Sec.*, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (remand warranted where the ALJ failed to adequately explain why he limited Plaintiff to "occasional interaction with others" instead of "superficial contact with the public, coworkers, or supervisors" as opined by state-agency psychologists' opinions and noting that the terms "occasional" and "superficial" are not interchangeable); *Swank v. Comm'r of Soc. Sec.*, 2021 WL 1345420, at *5 (S.D. Ohio Apr. 12, 2021) (remand required where state agency psychologists' opinions that Plaintiff was limited to only superficial interactions with coworkers but the ALJ restricted Plaintiff to no more than occasional interaction with the general public, co-workers, and supervisors, finding that occasional and "superficial" are not interchangeable terms).